CHRISTOPHER COGEL *vs*. HENRY H. RAPH and Wife.

October 12, 1877.

**Feme Sole—When Competent to Execute a Deed.**—It is legally competent for a *feme sole*, eighteen years of age, to make and execute within this state a valid deed of lands belonging to her, and situate therein.

**Deed Procured through Fraud—Bona Fide Purchaser without Notice.**—A title to real estate procured from a prior grantor through fraud cannot be impeached therefor in the hands of a subsequent *bona fide* purchaser for value, neither a privy to the fraud, nor affected with notice.

**Tax Deed—Void upon its Face.**—A tax deed which appears upon its face to have been made and executed without any legal authority is void and inoperative for any purpose.

Ejectment, tried in the district court for Goodhue county, by *Crosby*, J., with a jury. Plaintiff introduced, among other instruments, a warranty deed from Hannah Grignon, the patentee, to Herbert and Finley. Defendant offered to prove that Hannah Grignon was only eighteen years old at the time she executed the deed in evidence, and that the same had been fraudulently substituted, at the time of execution, for another deed for other lands; that the said Hannah had died in ignorance of this fraud, while still an infant and unmarried; and that her father and sole heir, Paul Grignon, had subsequently conveyed the premises in question to the defendant Henry H. Raph, by quit-claim deed. Plaintiff objected to the offer, and the court sustained the objection. Defendant then offered in evidence the record of a tax deed from the auditor of Goodhue county, which was also objected to by the plaintiff, and the objection sustained by the court. Defendant thereupon offered in evidence the record of a warranty deed of the lands in question, from Paul Grignon and wife to one Bowles. Plaintiff objected, and the objection was sustained by the court. The jury, under the instruction of the court, rendered a verdict for the plaintiff. A motion for a new trial was subsequently denied, and judgment was thereafter entered upon the verdict. The defendants thereupon appealed from the judgment.

*Colvill & Hoyt* and *J. W. Steel*, for appellants.

*Williston & Hall* and *J. C. McClure*, for respondent.

CORNELL, J. The deed from Hannah Grignon to Herbert and Finley was executed in this state, and the lands granted by it were situate therein. The question, then, concerning the legal capacity of the grantor to make it, so far as respects her age, must be determined by our laws, which expressly declare that "females of eighteen years shall be considered of full age for all purposes." Gen. St. c. 59, § 2. Being of

that age at the time, the fact of infancy as a ground for attacking the validity of the conveyance is not presented.

Conceding the deed to have been procured through fraud and imposition, it was, nevertheless, effectual to pass her estate in the lands and to vest the legal title in her grantees. So long as it remained in them it was liable to be defeated, because of the fraud; but whenever any subsequent, innocent, *bona fide* purchaser for value acquired it, without notice, it thereupon became in his hands an indefeasible title and estate, unaffected with the vice of the original transfer. *Somes* v. *Brewer*, 2 Pick. 183   The offer, therefore, to impeach the deed was rightfully overruled, inasmuch as the plaintiff was not a privy to the fraud, and no attempt was made to charge him with any notice of its existence.

It does not appear that Paul Grignon was ever seized of any title or estate in the premises, and hence the record of the deed from him to Bowles was rightfully excluded.

The tax deed, the record of which was rejected, purports to have been made and executed by S. J. Willard, auditor of Goodhue county.   It recites "that the auditor of the county of Goodhue, in the State of Minnesota, did, on the ninth day of January, in the year one thousand eight hundred and sixty-five, at, etc., in, etc., in conformity with all the requirements of the several acts in such case made and provided, expose to public sale all those certain tracts of land described as follows, to-wit:   The northeast quarter of the southeast quarter for the sum of $8.82, [and certain other parcels for certain other sums described, and stated in like manner, all in certain sections, etc., as therein mentioned,] the said sums respectively being the amount of taxes, interest, penalty and costs due on said several tracts of land respectively at the date of sale;" that one Hilton offered to pay said several sums set opposite said several tracts of land, and that being the highest price, and he being the highest bidder, said several tracts were each separately stricken off to him at said prices, and a certificate of purchase was issued therefor; and it is further recited, "that

said property is still unredeemed." After these recitals the deed concludes: "Now, therefore, I, S. J. Willard, auditor of said county of Goodhue, for and in consideration of the said sums, amounting in the aggregate to sixty-one dollars and eighty cents, paid to the county at the time of the said sale, and by virtue of the statute in such case made and provided, have granted, etc., to said H. Hilton, his heirs and assigns, said parcels of land, [describing them,] to have and to hold the same unto him, the said H. Hilton, his heirs and assigns, forever."

In offering the record of this deed in evidence, defendant did not propose to follow it with proof of the truth of any of its recitals, or of any fact *aliunde* the instrument. In considering, then, the ruling of the court upon this offer, though the recitals are regarded as true, the existence of no fact essential to the validity of the deed, which is not embraced in such recitals, can be presumed, especially in view of the implication raised by their use, that all facts deemed essential were therein stated. *Long* v. *Burnett*, 13 Iowa, 39.

The question presented, then, is whether, upon the facts thus appearing upon the face of the deed, it was *prima facie* an operative instrument of conveyance to pass to the grantee therein named any title and estate in the premises of which the plaintiff, as the former owner in fee, was seized. Under the laws in force at the time the sale referred to in the deed was made, county auditors had no authority or power whatever to expose to public sale, or to sell for taxes, any except forfeited lands. No lands could become such until after the taxes thereon had become not only due, but delinquent, a return thereof as delinquent and a failure to sell the same for want of bidders, at a regular delinquent tax sale, after notice and offer to sell by the county treasurer, when and not before they became forfeited to the state. Laws 1860, *c.* 2, §§ 25, 38. It is not shown upon the face of this deed, even inferentially, that the lands therein described ever became forfeited to the state for non-payment of taxes or otherwise. It is not

stated for what years they were assessed, nor that they ever became delinquent even; it is only averred that the taxes were due at the time of the sale. No inference can be drawn from the statement that in "exposing the land for sale the county auditor conformed to all the requirements of the several acts in such case made and provided," that such officer had any authority to make the sale, or that the lands were forfeited. The most that can be claimed from this is, that in conducting the sale he conformed to the requirements of the statute in reference to such sales as he had authority to make. Having no power or authority then to make the sale the deed is a nullity, and, of course, inoperative for any purpose. Being void it gave no color of title such as would protect a party entering upon the premises under it from an action for trespass, (*Shoat* v. *Walker*, 6 Kan. 73;) nor had it any effect in putting in motion the statute of limitations against the right of the lawful owner of the property to maintain an action to recover its possession against such trespasser.

It is insisted, however, that under the provision of the statute making "a tax deed *prima facie* evidence, in all cases, of a legal and valid title in the party holding the same, or his assigns," (Gen. St. *c*. 11, § 151,) the evidence should have been received. It can hardly be contended that this provision has any reference to a tax deed void upon its face, by reason of its appearing therefrom that the officer, by whom it purports to have been made, had no legal authority to make it. The statute prescribed no form for such a deed; it simply provided that the auditor should, whenever thereto authorized, execute and deliver a deed in due form. By this is meant a deed which, under the rules of common law, is sufficient to transfer the title of the former owner, and vest the estate in the purchaser. Such a deed must disclose authority in the auditor to make it, and the existence of such material facts as are essential to give it validity as a tax deed. Blackwell on Tax Titles, 366.

The judgment appealed from and the order denying a new trial are affirmed.